# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALATIEL GUTIERREZ, | 1:09-cv-02013-DLB (HC) |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF RESPONDENT, AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY |
| v. | |
| JAMES A. YATES, | [Doc. 1] |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge. Local Rule 305(b).

RELEVANT HISTORY

Following a jury trial in the California Superior Court, County of Kings, Petitioner was convicted of possession of heroin in state prison. It was also found true that he suffered three prior serious or violent convictions. (Lodged Doc. No. 1, at 35-40.)

On August 6, 2007, Petitioner was sentenced to a term of twenty-five years to life. (Id. at 87-88, 108.)

Petitioner filed a timely notice of appeal. On December 9, 2008, the California Court of Appeal, Fifth Appellate District affirmed the judgment. (Lodged Doc. No. 9.)

On January 21, 2009, Petitioner filed a petition for review in the California Supreme Court. (Lodged Doc. No. 10.) The petition was summarily denied on February 25, 2009. (Lodged Doc. No. 11.)

Petitioner filed the instant petition for writ of habeas corpus on November 17, 2009. (Court Doc. 1.) Respondent filed an answer to the petition on January 7, 2010, and Petitioner filed a traverse on February 8, 2010. (Court Docs. 10, 14.)

## STATEMENT OF FACTS[1]

> On December 3, 2006, [Petitioner's] wife came to visit him in the visiting room at Avenal State Prison. When the visit ended, a correctional officer searched [Petitioner] for contraband and found a condom in one of [Petitioner's] socks. The condom contained three bindles of suspected heroin, one bindle of tobacco, and rolling papers. The three bindles of suspected heroin collectively weighed over 26 grams. The officer that received the bindles and sent them to the laboratory for testing opined that 26 grams is a usable amount of heroin. A criminalist selected one of the three bindles at random for testing. The bindle weighed 7.99 grams and contained heroin. The criminalist opined that 7.99 grams would yield about 160 usable amounts of dosage units of heroin.

(Lodged Doc. No. 9, Opinion, at 2.)

## DISCUSSION

A.  Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Kings County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

---

[1] The following summary of facts are taken from the opinion of the California Court of Appeal, Fifth Appellate District (Lodged Doc. No. 9, at 2). The Court finds the state Court of Appeal's summary is a correct and fair summary of the facts of the case.

1  enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114

2  F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting

3  Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct.

4  1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059

5  (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant

6  petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

7  B.      Standard of Review

8         Where a petitioner files his federal habeas petition after the effective date of the Anti-

9  Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that

10 the state court's adjudication of his claim:

11         (1) resulted in a decision that was contrary to, or involved an unreasonable
            application of, clearly established Federal law, as determined by the Supreme
12         Court of the United States; or

13         (2) resulted in a decision that was based on an unreasonable determination of the
            facts in light of the evidence presented in the State court proceeding.
14

15 28 U.S.C. § 2254(d). A state court decision is "contrary to" federal law if it "applies a rule that

16 contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are

17 materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown

18 v. Payton, 544 U.S. 133,  141 (2005) citing Williams (Terry) v. Taylor, 529 U.S. 362, 405-06

19 (2000).  A state court decision will involve an "unreasonable application of" federal law only if it

20 is "objectively unreasonable." Id., quoting Williams, 529 U.S. at 409-10; Woodford v. Visciotti,

21 537 U.S. 19, 24-25 (2002) (*per curiam*).  "A federal habeas court may not issue the writ simply

22 because that court concludes in its independent judgment that the relevant state-court decision

23 applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations

24 omitted).  "Rather, that application must be objectively unreasonable." Id. (citations omitted).

25         "Factual determinations by state courts are presumed correct absent clear and convincing

26 evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court

27 and based on a factual determination will not be overturned on factual grounds unless objectively

28 unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)."

1 | Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  Both subsections (d)(2) and (e)(1) of § 2254
2 | apply to findings of historical or pure fact, not mixed questions of fact and law.  See Lambert v.
3 | Blodgett, 393 F.3d 943, 976-77 (2004).
4 |       Courts further review the last reasoned state court opinion.  See Ylst v. Nunnemaker, 501
5 | U.S. 979, 803 (1991).  However, where the state court decided an issue on the merits but
6 | provided no reasoned decision, courts conduct "an independent review of the record . . . to
7 | determine whether the state court [was objectively unreasonable] in its application of controlling
8 | federal law."  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  "[A]lthough we
9 | independently review the record, we still defer to the state court's ultimate decisions." *Pirtle v.*
10 | *Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).
11 | C.     Cruel and Unusual Punishment
12 |       Petitioner raises the single claim that his sentence of twenty-five years to life
13 | imprisonment violates the Eighth Amendment's prohibition against cruel and unusual
14 | punishment.
15 |       1.     Procedural Bar
16 |       Respondent initially argues that the claim is procedurally defaulted because the state
17 | appellate court found it was forfeited on appeal for failure to raise it in the trial court.  (Lodged
18 | Doc. 9, at 4) (citing People v. Norman, 109 Cal.App.4th 221, 229 (2003); People v. DeJesus, 38
19 | Cal.App.4th 27 (1995).
20 |       A federal court will not review a petitioner's claims if the state court has denied relief of
21 | those claims pursuant to a state law that is independent of federal law and adequate to support the
22 | judgment.  Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991); Coleman v. Thompson, 501 U.S. 722,
23 | 729-30 (1989); see also Fox Film Corp. v. Muller, 296 U.S. 207, 210 (1935).  A state court's
24 | refusal to hear the merits of a claim because of petitioner's failure to follow a state procedural
25 | rule is considered a denial of relief on independent and adequate state grounds.  Harris v. Reed,
26 | 489 U.S. 255, 260-61 (1989).  This doctrine of procedural default is based on the concerns of
27 | comity and federalism.  Coleman, 501 U.S. at 730-32.
28 |       There are limitations as to when a federal court should invoke procedural default and

1  refuse to evaluate the merits of a claim because the petitioner violated a state's procedural rules.
2  Procedural default can only block a claim in federal court if the state court "clearly and expressly
3  states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263
4  (1989). For California Supreme Court decisions, this means the Court must specifically have
5  stated that it denied relief on a procedural ground. Ylst v. Nunnemaker, 501 U.S. 797, 803
6  (1991); Acosta-Huerta v. Estelle, 7 F.3d 139, 142 (9th Cir. 1993); Hunter v. Aispuro, 982 F.2d
7  344, 347-48 (9th Cir. 1991). If the California Supreme Court denies a petitioner's claims without
8  any comment or citation, the federal court must consider that it is a decision on the merits.
9  Hunter v. Aispuro, 982 F.2d at 347-48.

10  In addition, a federal court may only impose a procedural bar on claims if the procedural
11  rule that the state used to deny relief is "firmly established and regularly followed." O'Dell v.
12  Thompson, 502 U.S. 995, 998 (1991) (statement of Blackmun joined by Stevens and O'Connor
13  respecting the denial of certiorari); Ford v. Georgia, 498 U.S. 411, 423-24 (1991); James v.
14  Kentucky, 466 U.S. 341, 348-51 (1984). The state procedural rule used must be clear,
15  consistently applied, and well-established at the time of the petitioner's purported default. Fields
16  v. Calderon, 125 F.3d 757, 760 (9th Cir. 1997); Calderon v. United States Dist. Court (Bean), 96
17  F.3d 112, 129 (9th Cir. 1996), *cert. denied,* 117 S.Ct. 1569.

18  In this case, the appellate court refused to consider this claim pursuant to California's
19  contemporaneous objection rule, because Petitioner's failed to challenge his sentence at the time
20  it was imposed. California's contemporaneous objection rule is consistently applied independent
21  of federal law. Melendez v. Pliler, 288 F.3d 1120, 1125 (9th Cir.2002); Vansickel v. White, 166
22  F.3d 953, 957 (9th Cir.1999). Petitioner makes no showing that the contemporaneous-objection
23  rule was not an adequate and independent basis for its decision. In addition, Petitioner has not
24  shown cause for the default or prejudice resulting from it, or that a fundamental miscarriage of
25  justice would occur if this claim is not heard. Nor has Petitioner presented any evidence
26  establishing his actual innocence. Therefore, Petitioner is procedurally barred from bringing this
27  claim.
28

2.    State Court Ruling

In any event, the state court independently denied the claim on the merits, stating, in relevant:

> A punishment for a term of years violates the Eighth Amendment to the United States Constitution if it is an " 'extreme sentence[ ] that [is] "grossly disproportionate" to the crime.' " (*Ewing v.. California* (2003) 538 U.S. 11, 23 (*Ewing*) (plur. opn. of O'Connor, J.); *Lockyer v. Andrade* (2003) 538 U.S. 63, 72; *Harmelin v. Michigan* (1991) 501 U.S. 957, 1001 (*Harmelin*) (conc. opn. of Kennedy, J.).) In a noncapital case, "'successful challenges to the proportionality of particular sentences have been exceedingly rare.' [Citation.]" (*Ewing, supra,* 538 U.S. at p. 21.)
>
> In *Ewing,* the United States Supreme Court upheld application of California's three strikes law where the defendant was sentenced to a term of 25 years to life for shoplifting golf clubs worth approximately $ 1,200. (*Ewing,supra,* 538 U.S. at pp. 17-18, 30-31.) In rejecting his cruel and unusual punishment claim, the court explained that the Eighth Amendment contains a narrow "proportionality principle" applicable to noncapital sentences. However, the Eighth Amendment does not require strict proportionality between crime and sentence, but only forbids extreme sentences that are grossly disproportionate to the crime. (*Id.* at p. 23.)
>
> Here, there is no doubt that the possession of a large quantity of heroin by a prison inmate is a serious crime. Appellant tries to minimize the seriousness of his offense on the basis that it was nonviolent and that there was no evidence he possessed the heroin for sale. However, a criminalist testified that one bindle *alone* would yield 160 usable amounts. It is difficult to conceive of any purpose for this crime *other* than to pose a serious risk to the bodily safety of others, either by appellant using the heroin himself or supplying it to other inmates to use. Justice Kennedy in his concurrence in *Harmelin* identified potential impacts of drug use and drug dealing on society, stating, "(1) A drug user may commit crime because of drug-induced changes in physiological functions, cognitive ability, and mood; (2) A drug user may commit crime in order to obtain money to buy drugs; and (3) A violent crime may occur as part of the drug business or culture." (*Harmelin, supra,* 501 U.S. at p. 1002.) In our view, these same societal impacts would apply in the prison setting and present a grave risk, not only to inmates, but also to prison staff.
>
> Appellant also compares his case to several others to demonstrate that the punishment rendered by the trial court was grossly disproportionate to his crime. We do not find those cases persuasive because we do not find appellant's crime to be comparable to the offenses in those cases. In *People v. Carmony* (2005) 127 Cal.App.4th 1066, the court found a 25-year-to-life sentence to be cruel and unusual where the current offense was a "harmless technical violation of a regulatory law"-failure to register as a sex offender. (*Id.* at pp. 1072-1077.) In *Banyard v. Duncan* (C.D.Cal.2004) 342 F.Supp.2d 865, a 25-year-to-life sentence was found to be grossly disproportionate where the predicate offense was possession of a small amount of rock cocaine. (*Id.* at pp. 867-868, 878.) The Ninth Circuit, in *Ramirez v. Castro* (9th Cir.2004) 365 F.3d 755, found a 25-year-to-life sentence grossly disproportionate to a crime of petty theft (*id.* at pp. 756-758), and

6

found a similar sentence grossly disproportionate to a crime of perjury in *Reyes v. Brown* (9th Cir.2005) 399 F.3d 964, 965, 968-970.
(Lodged Doc. No. 9, Opinion, at 4-6 (italics in original).)

  3. <u>Analysis of Merits</u>

  A criminal sentence that is not proportionate to the crime for which a defendant is convicted may indeed violate the Eighth Amendment.  In <u>Rummel v. Estelle</u>, 445 U.S. 263, 100 S.Ct. 1133 (1980), the Court upheld a life sentence imposed under a Texas recidivist statute for a defendant convicted of obtaining $120.75 by false pretenses, an offense normally punishable by imprisonment for two to ten years.  <u>Rummel v. Estelle</u>, 445 U.S. 263, 266, 100 S.Ct. 1133, 1135 (1980).  However, because he had two prior felony convictions (for fraudulent use of a credit card and passing a forged check), and had served two prior prison terms, the prosecution chose to proceed under the state's recidivist statute, which carried a life sentence.  <u>Id</u>. The Supreme Court held that Rummel's sentence of life imprisonment *with* the possibility of parole did not violate the Eighth Amendment.  <u>Id</u>. at 365-266, 100 S.Ct. at 1135. (emphasis added).  The Court noted that Rummel had suffered two separate convictions and terms of imprisonment for each prior, that he would be eligible for parole in twelve years, and that under the Texas recidivist statute, prosecutors retained the discretion not to invoke the statute for "petty" offenders.  445 U.S. at 278-81, 100 S.Ct. at 1141.

  Three years later, the U.S. Supreme Court set forth the criteria for finding a sentence to be cruel and unusual punishment under the federal Constitution and affirmed a decision of the Eighth Circuit holding unconstitutional a sentence of life imprisonment without the possibility of parole for a seven-time nonviolent felony recidivist.  <u>Solem v. Helm</u>, 463 U.S. 277, 103 S.Ct. 3001 (1983).  Applying the proportionality criteria, the Court concluded that Solem's sentence was grossly disproportionate to his crime of uttering a "no account" check for $100.00, even in light of his prior six nonviolent felony convictions: three for third degree burglary, one for obtaining money under false pretenses, one for grand larceny, and one for driving while intoxicated.  <u>Id</u>. at 279-81, 103 S.Ct. at 3004-5.  The Court emphasized that Solem's life sentence was far more severe than the sentence it had considered in <u>Rummel</u>, because Rummel was likely

1   to be eligible for parole in twelve years, while Solem was given no possibility of parole at all. Id.

2   In Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680 (1991), the defendant received a
3   mandatory sentence of life in prison *without* the possibility of parole for possession of more than
4   650 grams of cocaine, his first felony offense. Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct.
5   2680 (1991) (emphasis added). The U.S. Supreme Court upheld the sentence, with five justices
6   agreeing, for varying reasons, that the sentence did not violate the Eighth Amendment. Although
7   the Court did not produce a majority opinion, seven justices favored some manner of
8   proportionality review. Justice Kennedy, joined by Justices O'Connor and Souter, stated that a
9   noncapital sentence could violate the Eighth Amendment if it was "grossly disproportionate" to
10  the crime, but concluded that courts need not examine the second and third factors of
11  intrajurisdictional and interjurisdictional reviews discussed in Solem, unless "a threshold
12  comparison of the crime committed and the sentence imposed leads to an inference of gross
13  disproportionality." Id. at 1005. The Ninth Circuit, adopting Justice Kennedy's concurring
14  opinion in Harmelin, now refers to the test articulated as "the rule of Harmelin." Andrade v.
15  Attorney General of the State of California, 270 F.3d 743, 756 (9th Cir. 2001).

16  The majority of the justices in the Harmelin court agreed that outside capital punishment,
17  deeming a sentence cruel and unusual punishment is "exceedingly rare" due to the lack of
18  objective guidelines for terms of imprisonment. Harmelin, 501 U.S. 957, 964, 111 S.Ct. 2680
19  (1991). The threshold for such an inference of disproportionality is high. Id. at 1001, 111 S.Ct.
20  at 2707 (Kennedy, J. concurring). Generally, so long as the sentence imposed by the state court
21  does not exceed statutory maximums, the sentence will not be considered cruel and unusual
22  punishment under the Eighth Amendment. United States v. McDougherty, 920 F.2d 569, 576
23  (9th Cir. 1990).

24  The Harmelin Court concluded that the defendant's sentence did not meet the threshold
25  factor of "gross disproportionality." Justice Kennedy stressed the serious nature of Harmelin's
26  offense, stating that the offense "threatened to cause grave harm to society" unlike "the relatively
27  minor, nonviolent crime at issue in Solem." Harmelin v. Michigan, 501 U.S. 957, 1002, 111
28  S.Ct. 2680, 2705 (1991). Justice Kennedy further noted that the "possession, use, and

8

distribution of illegal drugs represent 'one of the greatest problems affecting the health and welfare of our population.'" and that the quantity of cocaine possessed by Harmelin had a potential yield of between 32,500, and 65,000 doses. Id.

In Lockyer v. Andrade, 538 U.S. 63 (2003), the Supreme Court discussed the current state of Eighth Amendment proportionality review and held that the only clearly established governing legal principle is that a "gross disproportionality" review applies to criminal sentences for a term of years. Id. at 72. Citing extensively to its past cases dealing with criminal sentencing and proportionality under the Eighth Amendment, the Court acknowledged that it has "not established a clear and consistent path for courts to follow." Id. The Supreme Court held that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' frame work is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." Id.

In Ewing v. California, 123 S. Ct.1179 (2003), the Supreme Court again reviewed the Supreme Court's Eighth Amendment jurisprudence, and chose to adopt Justice Kennedy's view [2] that:

> [There are] four principles of proportionality review-- the primacy of the legislature; the variety of legitimate penological schemes; the nature of our federal system; and, the requirement that proportionality be guided by objective factors– that inform the final one: The Eighth Amendment does not require strict proportionality between the crime and the sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime.

Ewing, at 1186-1187.

In this case, Petitioner has a substantial criminal history, including convictions for possession of a controlled substance for sale, second-degree robbery, first-degree robbery, and second-degree murder. (Lodged Doc. 1, at 101.) All of these offenses by statutory definition are serious and violent. Petitioner himself admits that his prior convictions are "certainly serious." Petitioner acknowledges possession of narcotics is a serious offense but attempts to characterize it as nonviolent and passive, such is not the case. Petitioner's possession of a large quantity of

---

[2] As expressed in his concurring opinion in Harmelin v. Michigan, 501 U.S. 957, 1001 (1991), *citing* Solem v. Helm, 463 U.S. 277, 288 (1983).

heroin in three separate bindles-each of which would yield 160 usable amounts, was clearly a threat to institutional security. See Pell v. Procunier, 417 U.S. 817, 823 (1974) ("Central to all other corrections goals is the institutional consideration of internal security"). Petitioner possessed the large amount of heroin either for his own use and/or to distribute to other inmates which would certainly endanger the safety of the institution. Thus, the imposition of twenty-five year to life for possessing a large amount of heroin in prison is not cruel nor unusual.

Petitioner's reliance on Solem is misplaced. Unlike Solem, who had only nonviolent prior conviction, Petitioner has suffered multiple prior violent offenses, including murder, first degree robbery, and second degree robbery. In addition, Petitioner retains the possibility for parole. Thus, Petitioner's sentence is less severe than the one invalidated in Solem, where the petitioner was sentenced to life without the possibility of parole. See Solem, 463 U.S. at 297. Moreover, Petitioner's sentence is similar or less harsh when compared to those sentences that have not been found "grossly disproportionate" under the Eighth Amendment. See e.g. Ewing v. California, 538 U.S. at 24-28 (sentence of 25 years for triggering offense of grand theft with prior convictions not grossly disproportionate); Harmlein, 501 U.S. at 1004 (life sentence without possibility of parole for possession of 672 grams of cocaine not grossly disproportionate); Rummel, 445 U.S. at 284-285 (life sentence with possibility of parole for recidivist convicted of fraudulent use of credit card, passing forged check, and obtaining money under false pretenses); Taylor v. Lewis, 460 F.3d 1093, 1101-1102 (9th Cir. 2006) (sentence of 25 years-to-life for possession of .036 grams of cocaine base not grossly disproportionate because prisoner served multiple prior prison terms and suffered prior convictions involving violence and crimes against a person).

In sum, Petitioner's criminal behavior makes him the precise candidate for which California's Three Strikes sentencing law was implemented. Viewed in this context, Petitioner's case is simply not a "rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." Harmelin, 501 U.S. at 1005. The appellate court properly considered the current offense of possession of heroin as well as his prior strike offenses and reasonably concluded that his sentence was not unconstitutionally

disproportionate. The appellate court's rejection of this claim was not contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court, nor an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. §§ 2254(d)(1), (2).

D.     Evidentiary Hearing

Petitioner requests that this Court conduct an appropriate evidentiary hearing.

"A petitioner seeking a writ of habeas corpus is entitled to an evidentiary hearing on a claim when (1) the petitioner's allegations, if proved would entitle him to relief, and (2) the state court trier of fact has not, after a full and fair hearing, reliably found the relevant facts." Williams v. Calderon, 52 F.3d 1465, 1484 (9th Cir. 1995) (internal quotation marks omitted). An evidentiary hearing is unnecessary "if either the state court has reliably found the relevant facts, Tinsley v. Borg, 895 F.2d 520, 530 (9th Cir. 1990), or there are no disputed facts and the claim presents a purely legal question. Harris v. Pulley, 885 F.2d 1354, 1378 (9th Cir. 1988)." Nor is an evidentiary hearing required if the issues can be resolved by reference to the existing record. See Schriro v. Landrigan, 550 U.S. 465, 474 (2007) ("if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing"); Totten v. Merkle, 137 F.3d 1172, 1176 (9th Cir. 1998) (an evidentiary hearing is not required on issues that can be resolved by reference to the state court record).

In this instance, because the petition can be resolved by reference to the existing record, an evidentiary hearing is not necessary. Accordingly, Petitioner's request must be denied.

## ORDER

Based on the foregoing, it is HEREBY ORDERED that:

1.     The instant petition for writ of habeas corpus is DENIED;

2.     The Clerk of Court is directed to enter judgment in favor of Respondent; and

3.     The court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," i.e., when "reasonable jurists would find the district court's assessment of

11

the constitutional claims debatable or wrong"; Hoffman v. Arave, 455 F.3d 926, 943 (9th Cir. 2006) (same).  In the present case, the Court finds that reasonable jurists would not find it debatable that the state courts' decision denying Petitioner's petition for writ of habeas corpus were not "objectively unreasonable."

IT IS SO ORDERED.

Dated:   **March 8, 2010**              **/s/ Dennis L. Beck**
                                                              UNITED STATES MAGISTRATE JUDGE